Okay, we are now listening, going to hear McFarland versus Ivy Hill SNF, and we're going to hear Mr. Weinstein first. May it please the Court, Mark Weinstein here for Mr. McFarland, plaintiff. Excuse me, can I help you people who are at the door? Would you like to come in? No, that's all right. You can stay too. I might need the help. They've abandoned you. Advantage in numbers. Okay, Mr. Weinstein, go ahead. Mr. Weinstein. Yes, Your Honor. Before you get into the substance of your argument. Excuse me, Leonard, let him tell us his name on the record. Oh, I beg your pardon. Go ahead. Your Honors, may it please the Court, Mark Weinstein, counsel for Mr. McFarland, appellant. Okay. Thank you. Now, Judge Garth. I have a couple of procedural questions that I wanted to ask you, and I wanted them cleared up before we went on. First of all, the order that was entered by the district court, Judge Joyner. He entered an order granting judgment on the summary judgment, and then he dismissed the complaint. Was that taken notice by you as to whether this is something that can be done, and whether or not you have a complaint that is existing after judgment had been entered in favor of the defendant? Well, Your Honor, how it went was that in November of 2009, or a little earlier than that. 2010. November of 2010, he entered summary judgment on count one of plaintiff's amended complaint, and it was granted in favor of the defendant. That is, Ivy Hill. And then he said in paragraph three, count one of the plaintiff's amended complaint is dismissed. Yes. Your Honor, that was on reconsideration filed by the defendant. Judge Joyner at the district court granted summary judgment on the three ADA counts, disability case, and on one part of the FMLA case initially. The district court then scheduled it for trial on the FMLA interference case. When the judge scheduled it for trial on the FMLA interference case, Ivy Hill sought reconsideration. Judge Joyner granted reconsideration, dismissed the remaining claim, and that ended the entire proceedings. Can you dismiss a complaint after you've granted judgment on it? Your Honor, Judge Joyner had not dismissed the FMLA case prior to that November order. He dismissed count one of the plaintiff's amended complaint in the November 9, 2010 order. He dismissed the complaint, the amended complaint, and he also granted summary judgment on count one. Can you do that? Your Honor, when the district court granted reconsideration, the court entered or granted summary judgment and dismissed the case. So, yes, I didn't raise it. I didn't have a problem with it. I thought procedurally it was correct because they raised the case in reconsideration. That being so, did you take an appeal from anything other than count one? Yes. Where does that notice of appeal appear? Because the only thing I have seen is an appeal on count one. Your Honor, when the remaining FMLA count was dismissed, we filed for reconsideration. That was denied in, I think, May of 2011. At that point in time, it was a final order on reconsideration on the underlying summary judgment order, and we provided all of that in our appeal documents, and it's never been raised or made an issue up until this point in time. We had raised all these things at the trial court. The only thing that I have found is an appeal from count one. This is the appeal, and that's the order. It's on the 10th day of May 2011. It's a phantom. Upon consideration of plaintiff's motion for reconsideration for the order granting summary judgment on count one, it is hereby ordered the motion is denied. That's the order, and the appeal was taken on May 12, 2011. That's two days later, and that's from count one, and I want to know why your brief refers to matters that are other than count one, because unless it's taken an appeal from it, you can't bring it up before us. Your Honor, because when the reconsideration order was entered, we certainly couldn't raise it prior to the district court dismissing all aspects of the case and all parts of the case, so that's how we had filed the notice of appeal of that last order entered, which dismissed the final claims. Now, fairly said, it may, in that notice of appeal form, I may have only mentioned the motion for reconsideration because that was the final date. That was the date I had to worry about because that's when reconsideration was entered. Well, all right. We'll deal with it. Go ahead, sir. I'm sorry. Okay. Your Honors, this is not the kind of case for which judicial estoppel, that doctrine, was intended to apply. We don't have someone here, Mr. McFarlane, a plaintiff, that had played fast and loose with the courts. There was no affront to judicial integrity. There was nothing here wherein it was disingenuous arguments made prior to this case, and that, based on what the Supreme Court has written in the Cleveland case and the Third Circuits, subsequent rulings, that is the touchstone. Now, when we look even further and we go beyond the general idea that this is not the kind of judicial estoppel case, we look at the specific elements that the Third Circuit has articulated, and the first key element to do that, to invoke judicial estoppel, is that there has to be some sort of factual representation in conflict with what McFarlane is trying to do here, and there was none. There was nothing submitted prior to the district court that is in conflict with what McFarlane has alleged here, and that is he said he was able to go back to work on April 17th, 2008. He presented himself to return to work. They refused. They have nothing after that, no representation that McFarlane made to anybody, that he was unable to work after that point in time. Again, he presented himself as able to work on April 17th, 2008. They said, no, you can't come back, and the only other record evidence is that he continued receiving the disability benefits. Wait a minute. Go ahead. Doesn't that suggest, isn't that a statement that he was still disabled? Not necessarily, Your Honor. How can he receive and accept disability payments when he has put himself in the position of saying I'm not disabled? Well, what we know is that he continued to receive the benefits. We don't know why the disability carrier continued to pay him. Well, but doesn't his receipt of the benefits suggest that he accepts them? No, Your Honor. Respectfully, the judicial estoppel doctrine provided by the Supreme Court in the Cleveland case and debts in the Third Circuit requires more. And that's part of what the error was in the district court. The district court saw this and said, hey, McFarlane's collecting disability benefits, so obviously he's making some sort of contrary representation to what he has to do here. So you're suggesting that you cannot have judicial estoppel by a failure to disclose something? Well, I don't – I didn't go that far, Your Honor. I didn't go that far because we didn't have to go that far in this case. And that kind of thing had not yet been briefed, and I don't believe it's been raised here, because there has to be some factual representation that McFarlane would have to reconcile. There is none in the record. But doesn't his – I'm sorry. No, no, you go with it. Didn't the carrier, the disability carrier, say if you are able to return to work, you must notify us? That's in the policy, yes. And we don't know what McFarlane said to them. We don't know what his doctor said to them, because the file was never subpoenaed during discovery. And the trial court just inferred it. The trial court just inferred it. And again, the problem is there's nothing that they can show, the defendant can show, or Ivy Hill, that McFarlane did anything after April 17th, 2008, when he presented himself ready to return. The district court held that his receipt – A seizure? Oh, she's having a seizure. Oh. Leonard, somebody's having a seizure in the courtroom. You can start fresh. Leonard, will you – oh, no, but Leonard asked those questions. So do we still have the tape going? Oh, okay. All right. Turn it on. And Leonard, are you okay? Yes. All right. We're going to continue. Very well. Huh? I had a question. Don't worry about his time. Let him talk.  Don't worry. I had a question about – to ask you, Mr. Weinstein. Excuse me. Wait a minute. You have – let's assume that two minutes left and you have 13 minutes, except for whatever you held off. I understand. Thank you, Your Honor. Okay. Go ahead, Leonard. You have a question. My question is this. Aside from judicial estoppel, as I understand the Code of Federal Regulations, it provides – and I'm quoting now from 29 Code of Federal Regulations, Section 825.216. And this is little c. If the employee is unable to perform an essential function of the position because of a physical or mental condition, including the continuation of a serious health condition or an injury or illness also covered by workers' compensation, the employee – and I underline this with my voice – the employee has no right to restoration to another position under the FMLA. That's the federal – that's the family medical leave. Yeah. And my question is this. At the time in April that Mr. McFarland told his employer that he could return, he was under restriction. He had a restriction that he could not lift more than 20 pounds. That restriction was not lifted until some later period. If at the time that he told his employer that he was under restriction under the CFR, didn't the employer have the perfect right to deny him leave under the family and medical leave act? If lifting more than 20 pounds was an essential function of the job, then they would not have been required to restore him or reinstate him. Here, though, the record below is that lifting 20 pounds or more was a minimal negligible part of the job. And that was – first of all, he had an assistant to help him, and it was only one task out of about 30 that he listed. If there was a change in a dryer motor or a change in an air conditioner motor, that was the only time in all of his duties as a maintenance supervisor that it would require more than 20 pounds. And he had an assistant anyway. So that's why he was able to do the essential functions of his job, did not ask for an accommodation. Is that why the district court denied summary judgment initially on the interference claim? In part. And also because they found, the district court found, that there was an issue of material fact as to when McFarland's FMLA time would end. So it was those two issues of material fact. Ivy Hill says, hey, he didn't have any more FMLA time, and as well he couldn't do the essential job functions. Judge Joiner said, no, there is an issue of fact there on both those points. And then on reconsideration, the district court dismissed it on the grounds of judicial estoppel. And our point on that is aside from the fact that there's nothing in the record showing an inconsistency after April 17, 2008, as well is that even if there had been an inconsistency, let's say they're right, let's say there was some sort of inconsistency, or let's say that the district court was right in making an inference against McFarland, which we respectfully say the district court should not have made an inference against McFarland, but if the inference is proper that he made some sort of inconsistent representation, well, then the question is, you know, could McFarland reconcile it? And sure. Logically he did.  He said, look, anything that I may have submitted, because there's no record evidence of it, but anything that we said and sent in was because of what I was told by my employer. My employer says I couldn't return to work, so the disability benefits continued, and he didn't do anything further. I mean, if we look at the Third Circuit's decision in Montrose, and if we look at some of those other cases, Powell's from the Seventh Circuit, the Mulhern case that we cited, several of these courts and judges have found that if you collect disability benefits because your employer tells you you're disabled or your employer won't allow you to return to work, it doesn't, doesn't, you know, that is a legitimate reconciliation, that you're not playing fast and loose with the rules, which is what this case is about. I mean, essentially, it would be Ivy Hill. That should be a stop from raising this argument, since they're the ones that said he was unable to work in the first place. So that was the second point here, is that even if, in fact, there was something that needed to be reconciled, and, again, we say there's nothing in the record that needed to be reconciled, but even if, in fact, there was something to be reconciled, obviously he could reconcile it just by common sense, and we had it in the record. Ginsburg. Are you suggesting that his receipt of the disability payments do not constitute a statement, an averment that he was disabled? That is correct, Your Honor. Based on the opinions of this Court in Montrose and Bisker, saying there has to be specific factual representations that are in conflict. Just general statements or inferences are not enough. You know, I was the district judge in Montrose who was reversed, right? Oh, Your Honor, let me skip over Montrose. Let's just go to Bisker, Your Honor. In any event, I understand Your Honor's point, but that is what the law is as how the doctrine is looked at when reconciling statements. But finally ---- Well, are you saying that there was no representation made to the insurance carrier when he accepted the disability payments? Nothing after April 17, 2008, when he presented himself for return. Obviously in the beginning ---- Well, how did the ---- I apologize. I didn't quite hear that at the end of that question. What was the connection? I mean ---- Oh, Your Honor, the connection is April 17, 2008, he presents himself as ready to return. Right at that time ---- Did he tell the insurance carrier that? His statements were that he submitted whatever they asked for or his doctor said. No. What was his representation when he accepted a disability payment? Doesn't he make a representation that I'm disabled? I'm going to take your money, but I'm not disabled? Well, not ---- I mean, he takes the money. Yes, he takes the money. For how many years did he take the money? Just another two months, or excuse me, three months, May, June, and July. Okay. He takes the money. Yes. And that isn't saying something? Well, it's saying something indirectly. And what I've argued ---- Well, indirectly or directly, he must be saying something. Here he's saying all we know would be something indirect. Had there been record evidence? Had they gotten the disability carrier file? And let's say, Your Honor, McFarlane had submitted something May 5, 2008. You know, Your Honors, let's say McFarlane said I can't get out of bed. I can't stand for more than 10 minutes. But that's not what happened. Correct. What happened is he took the money as disabled, but he's not ---- and then he told the employer I'm not disabled. Actually, in reverse. He told his employer that he was able to return. They said, No, you're not. So he kept collecting the disability benefits, although there's nothing that shows that there's anything new provided to the disability carrier. As far as we know, it was an oversight. As far as we know, they didn't care. But, Your Honor, if I might make this segue into just my last point, and I appreciate the Court's patience on the time. Yes. I think, yeah, your red light is on, but go ahead. I appreciate it. One other point that I wanted to make was that in order to invoke judicial estoppel, there has to be some review of the right sanction here. And as Your Honor points out, there's something that ought to be looked at as far as, hey, this guy's collecting benefits or, excuse me, disability benefits after, you know, he was able to return to work. And so the remedy here, rather, if there was going to be judicial estoppel invoked, the remedy here would seem most appropriate to be he doesn't get back pay for that period of time, or he's got to pay back the disability carrier if, in fact, the case goes to trial, if, in fact, he wins, and there's a reward. They should ignore his representation to the contrary, is what you're saying. There's no sanction. Oh. Well, no, not ignore it, but don't throw the case out just because he had secured or collected disability benefits after he was told he couldn't return to work. Not his fault. And that's what this judicial estoppel doctrine is all about. Thank you. Your Honors, if I could have still that three minutes on rebuttal. Yes, sure. Good afternoon, Your Honors. Judge Banaski, Judge Slovener, Judge Garth, it's a great pleasure to be here. My name is Dawn Richards, and I represent the appellee in this matter. That is Ivy Hill Skilled Nursing Facility. To respond to a few of Mr. Weinstein's comments, to stay directly on point with what is at issue in this case, first, he mentioned that judicial estoppel is not applicable in this case. The order of the Eastern District Court dated September 2010 covers that in great length on page 3. And they do mention that despite the defendant raised to fail to raise the doctrine of estoppel for the first, raised it in the first time in its motion for summary judgment, plaintiff did not object to defendant's tardiness. Also, the court mentioned that they are not bound to accept a party's waiver of judicial estoppel. And judicial estoppel is designed to protect the integrity of the judicial process and may be raised to a second. Wait a minute, you're talking very fast. I apologize. I don't think that Garth can follow you. I apologize. Go ahead. You better talk a little more slowly. The court mentioned that there are several reasons why, despite the fact that as the defendant, we raised the doctrine of judicial estoppel for the first time in our motion for summary judgment, the district court at that time did address it in this order and did state that there were various reasons why it was an acceptable approach and why they would warrant or consider judicial estoppel in this case. The next point that I wanted to address was the point with regard to Mr. McFarland returning to work on April 7th or 8th and indicating that he was able to fulfill the essential functions of his job. Mr. McFarland actually showed up back for work on April 16th. He did not arrive back for work on April 8th at the expiration of his FMLA leave. Well, the district court found there to be a genuine dispute of fact as to whether FMLA leave expired. A lot of 12 weeks expired on April 8th. Correct. All right. Mr. McFarland did show up back for work on April 16th. The stage we're at right now, we'll accept that determination, right? Yes. All right. Yes. But Mr. McFarland did show up back for work on April 16th. He did not show up back at the facility at that proposed expiration of the leave. But he showed up back at the facility on the 16th. And when he showed up back at the facility to return to work, he came with a doctor's note that stated that he could return to work on May 1st in a part-time capacity with restrictions. After we mentioned to him that he would not be able to return to his job, he then miraculously came up with another doctor's note the very next day that stated that he could return to his job and he could return immediately, but there were still restrictions, but he could come back full-time. The restrictions still existed in the doctor's note on April 17th. Did your records show whether either of these was his regular doctor? I believe that his doctor changed over the course of time, but to my knowledge. Overnight? I'm sorry, Your Honor. You say, I mean, he came back the next day with a different doctor. They were both from Thomas Jefferson University. They were both on the same letterhead. They both had the same individual signatures on both of the notes. You mean the same doctor? One dated 4-16, one dated 4-17, and what appears to be the exact same handwriting from Thomas Jefferson University physicians. That's interesting. So when he returned to work with those notes, even with the restrictions he was told that he would not be returned to his position because he was not able to fulfill the essential functions of his job. His job was maintenance director at the time, and maintenance director at the facility, it's not an overly staffed facility, and maintenance director at the facility was a hands-on position. And he was responsible for doing things that are in the records, such as re-hanging doors, re-hanging headboards, moving televisions, moving equipment. There were responsibilities of the maintenance director position that he had fulfilled prior to his condition that he was unable to fulfill after his condition. And so he really could not fulfill the essential functions of his job. Also in his job description it did state that he would need to be able to push, pull, or lift over 25 pounds to a height of greater than five feet, which Mr. McFarland at the time was not able to do. Roberts. Why didn't the district court then, you've given us these facts, grant summary judgment without having to reach the judicial estoppel issue? What precluded or did the district judge find there to be an issue of fact as to whether he was capable of returning to work? I don't recall that the district court did find that there was an issue of fact as to whether he could. I don't know that we reached that point. We stopped at the date, the 8th, and they addressed the judicial estoppel at that point. I don't necessarily recall. I apologize. Also I wanted to address the point of whether there was a statement made by appellant with regard to his inability to perform his job. There was an application that was submitted to the disability carrier, Unum, at the onset of his disability, which was factual, and stated that he could not do his job. There was paperwork that came back from Unum to the appellant that stated that he would have to notify them immediately if there was ever a change in his ability to do his job in any capacity. There's never been a notification of Unum, and the benefits continued until the end of July. He continued to accept benefits. There was a declaration that was submitted by the appellant for Mr. McFarland, whereby he stated that the reason he thought that he believed that he was able to continue his disability insurance was because the facility told him that. All the facility told him was that he was unable to fulfill the essential functions of his job, and the facility was not responsible for making the determination at Unum as to whether or not he should be receiving disability insurance benefits. That decision was made by Unum, and it was made based on statements from his physician. Also Unum advised the physician that a doctor's note wouldn't be sufficient. You couldn't submit a doctor's note to Unum to say that you're capable of doing your job or you're not capable of doing it. It required medical records. So Unum required medical records from the doctor, medical record documentation in order to make the decision. So it was the physician. We don't have the medical records. Why is this record adequate to make a determination of judicial estoppel without knowing what representations were placed in medical records? Well, the burden of proof rested with the appellant to explain away a prior inconsistent statement. So the district court felt as though they... Wait a second. You said there was a prior inconsistent statement, but we don't have any statement from McFarland. You have his receipt of benefits. We do have letters from Unum stating that his benefits were accepted. Well, we do have documentation from the physician at the initial onset. You have stuff from Unum to him and you don't have anything back from him. We have something from the physician to Unum stating that this is his condition, and that's in the record, stating that the condition he suffered from would be temporary for an estimated six months. And that's the documentation that Unum relied upon. But it was incumbent upon the physician to advise Unum that the benefits were no longer warranted if Mr. McFarland was able to work. On a monthly basis, Mr. McFarland received a phone call from Unum, and this is from his admission, number 44, received a monthly call from Unum asking him if there had been any change to his condition and telling him to instruct his physicians to forward the information to Unum. The Unum benefits were extended. We did, during discovery, request information, communications from the physician to Unum, and we were not provided with that information. But in the district court, the district court found that it was the burden of proof of the appellant to provide some way to explain away these inconsistent statements. That would have been a way to do that, but nothing was provided. I also wanted to address the issue of the cases that opposing counsel brought forth with regard to cases of disability and discrimination existing side by side, which is true. There are cases that represent that this can happen based on the criteria with which individuals are eligible for certain disability benefits. But in this particular case, the documentation that was provided to Unum extended the benefits and allowed him to continue to be eligible for disability benefits. So he allowed that to continue and continued to collect on a monthly basis the disability benefits, and therefore he continued to accept those benefits at the same time claiming to this court and claiming to this facility that he was able to come back to work. There was also within opposing counsel's brief an issue of whether when he returned to his job after his restrictions were lifted, if he was disabled at that point in time or eligible for restoration. At that time, his position had been filled even though back in August his restrictions were lifted. While you're pausing, would you tell me whether you regarded the notice of appeal as bringing up the other issues in the complaint, one of which is written about appears in the plaintiff's brief and an answer to which appears on pages 66 and following in your brief. Yes, we did reconsider that issue and following the history of the case, there were several motions for reconsideration and approvals of denials of such motion, and it was our understanding that that particular issue with the regarded as disabled carried forward from a prior case prior to the subsequent motion for reconsideration and so therefore was preserved for this court. So it was our understanding as well that the regarded as claim still existed as it is today. Well now one of the matters that we will have to, I assume we will have to deal with is whether we deal with anything other than count one. Do you have any authority which says that the final notice of appeal that is filed with us is not the governing document and brings up only those matters which are listed in the notice of appeal? Is there any authority that says you can go back and pick up denials or grants prior to that? No sir, I do not. And so your conclusion would be that what, that we must deal with these other issues or that we don't have to deal with them because they were never appealed. Should the record state in accordance with precedent that you don't have to consider the second count in this matter, then I would prefer that you did not consider it, but I have no authority with me right now to support it one way or the other way. It was my understanding within this case that, that this secondary issue was an appealable issue and was preserved for appeal today. Thank you. Are there any other questions? I have no other questions. Thank you very much. Thank you. Your Honors, if I might. He has how much rebuttal? Three. Okay. Your Honors, on the count one, the FMLA, again, the district court found that there was a genuine issue of material fact as to when his FMLA expired and whether he was able to do the essential functions of the job. As far as the judicial stopple and the point out the BISCR decision, which cites Montrose as well, but again, BISCR is to the point where you just can't infer things. You can't just look at indirect things. You have to look at specific factual representations if you're going to invoke this heavy doctrine of judicial stopple. BISCR is a non-precedential opinion? Correct. It is not. And what it does, though, it cites the other ones that we've mentioned, including Montrose. But in Judge Vineski, if I might, you brought up this point, why didn't the district court just dismiss it on the record? Why did it have to go to judicial stopple to do so? And that was the very point we've made to this Court about that Baker decision. They cite Baker repeatedly as being, oh, this is the exact same case where judicial stopple ended up being fatal to the case. Well, in Baker, the district court threw the case out, dismissed it on summary judgment, on the record, on the record that was presented during the case. It was dicta, at least the way I read it and presented it to this Court, it was dicta that the district court put in. And then when it was affirmed by the Third Circuit, the Third Circuit did not address the propriety of judicial stopple. It just affirmed it on the record. And so that's the point we wanted to make as well. But again, another point, if I could, and I know we're jumping around here, but on the affirmative, on this issue of judicial stopple, it's an affirmative defense. They have to prove it. They have to meet the burden of proof to have the case thrown out, not us. And they didn't. And there were some questions about who got what medical records and who did what to get the medical records. And the burden was on them to do it if they were going to meet their proofs. And finally, let me just briefly, if I could, I've got 30 seconds to deal with that ADA issue. In this case. And I think it only really warrants 30 seconds because there's a very, very slender excerpt from the deposition of the decision maker. A very slender part of that record, but it's telling. It is illuminating. It shows that a reasonable jury could find that they considered him to do any jobs that required any lifting whatsoever. Mr. I beg your pardon. Mr. Weinstein. Yes, Your Honor. But it was never appealed. Now, unless you have some authority, which convinces us that the notice of appeal brings forward all of the decisions that are made prior to them when they are not recapped in the notice of appeal. We may have a problem. Your Honors, if I might, could I submit something by letter to the court addressing that point? No, answer it now. Because we go into conference from here. Yes, I understand. And Your Honors, because it was never raised in any of the appeal papers, because it had never been raised anywhere, I didn't come with a particular citation on it, but I'd be happy to provide it. Yeah, that's fine. Okay. Thank you. Can you send, do you think you have a citation in your office? Well, I'll certainly look. And if Judge Garth's point is correct, I'll concede it. All right, very well. Okay, that's fine. And let me commend you on your efforts in responding to the attorney who had a problem. Thank you. Thank you, Your Honors. And send, you could send that to us by the clerk's office, so it will come by email. There's a, I think there's a.